IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-545-SLR |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. and | ) | REDACTED - |
| SAMSUNG ELECTRONICS AMERICA, | ) | PUBLIC VERSION |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SAMSUNG'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S WILLFUL INFRINGEMENT AND PRE-COMPLAINT INDUCEMENT AND CONTRIBUTORY INFRINGEMENT CLAIMS <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700

*Attorneys for Defendants*

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000


Dated: October 19, 2015

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................1

II.  PLAINTIFF'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE
     DISMISSED ...............................................................................................................1

     A.   Plaintiff Has Failed to Plead Facts Plausibly Demonstrating that Samsung
          Had Pre-Complaint "Knowledge" Of The Patents-in-Suit ...................................1

     B.   Plaintiff Has Failed to Plead Facts Plausibly Demonstrating "Objective
          Recklessness" .......................................................................................................4

III. PLAINTIFF'S PRE-COMPLAINT INDUCEMENT AND CONTRIBUTORY
     INFRINGEMENT CLAIMS SHOULD BE DISMISSED .................................................6

     A.   Plaintiff Has Failed to Plead Facts Plausibly Demonstrating that Samsung
          Had Pre-Complaint "Knowledge" Of The Patents-in-Suit ...................................6

     B.   Plaintiff Has Failed to Plead Facts Plausibly Demonstrating "Intent" ...................6

IV.  CONCLUSION ...........................................................................................................9

**TABLE OF AUTHORITIES**

**Page**

CASES

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994)..............................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................2, 4, 9

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010)........................................................4, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................4, 9

*Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*,
    C.A. No. 12-1111, 2013 WL 6058472 (D. Del. Nov. 18, 2013) ......................................8

*Cascades Computer Innovation, LLC v. Samsung Electronics Co.*,
    77 F. Supp. 3d 756 (N.D. Ill. 2015) ..............................................2

*Cloud Farm Associates, L.P. v. Volkswagen Grp. of Am., Inc.*,
    C.A. No. 10-502-LPS, 2012 WL 3069390 (D. Del. July 27, 2012) ..................................3

*Elm 3DS Innovations, LLC v. Samsung Electronics Co.*,
    C.A. No. 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015)......................4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754, 131 S. Ct. 2060 (2011)..............................................6

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012).........................................................6

*In re Seagate Technology LLC*,
    497 F.3d 1360 (Fed. Cir. 2007)........................................................4

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    66 F. Supp. 3d 495 (D. Del. 2014).........................................2, 3, 5

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012).......................................6, 7, 9

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    No. 14-CV-01745-VC, 2015 WL 3799533 (N.D. Cal. June 18, 2015)............................3

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
    852 F. Supp. 2d 470 (D. Del. 2012).......................................5, 7, 8

*Orlando Commc'ns LLC v. LG Electronics, Inc.*,
　　No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015)...................3

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
　　29 F. Supp. 3d 455 (D. Del. 2014)........................................................................7

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*,
　　957 F. Supp. 2d 1189 (S.D. Cal. 2013)..............................................................2, 6

*Spherix Inc. v. Cisco Systems, Inc.*,
　　C.A. No. No. 14-393-SLR, 2015 WL 1517435 (D. Del. Mar. 31, 2015) .................2, 3, 4

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*,
　　No. 14-502 (JLL)(JAD), 2014 WL 3345618 (D.N.J. July 7, 2014) ...........................7, 8

*Symantec Corp. v. Computer Associates Int'l, Inc.*,
　　522 F.3d 1279 (Fed. Cir. 2008)...........................................................................7

*Telecomm Innovations, LLC v. Ricoh Co., Ltd.*,
　　966 F. Supp. 2d 390 (D. Del. 2013)......................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007).............................................................................................2

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
　　No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ..............................5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
　　581 F.3d 1317 (Fed. Cir. 2009)...........................................................................7

## STATUTES

35 U.S.C. § 271(b) ......................................................................................................6

35 U.S.C. § 271(c) ......................................................................................................6

35 U.S.C. § 287(a) ......................................................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 9

## I.    INTRODUCTION

Plaintiff's defense to Samsung's motion to dismiss Plaintiff's willful infringement and pre-suit inducement and contributory infringement claims rests on a letter it sent to Samsung on May 4, 2015—just 52 days before filing its complaint against Samsung.  Despite the importance of this letter to Plaintiff's claims, Plaintiff *did not* submit the letter to the Court with its Answering Brief, nor did Plaintiff describe the contents of the letter or the statements it made to Samsung therein.  In the May 4 letter, Plaintiff claims that "one or more patent claims in [its patent] portfolio is required to practice or otherwise comply with LTE standards," and then attaches, without explanation, a lengthy appendix including 85 foreign and United States patents and patent applications.  The letter never identifies any specific claims, much less patents or products, that are allegedly infringed by Samsung.  As explained in detail below, the contents and timing of the letter confirm that Plaintiff has not—and indeed cannot—plead facts sufficient to support its willful infringement and pre-suit inducement and contributory infringement claims.  Accordingly, Samsung respectfully requests that this Court dismiss Plaintiff's willfulness and pre-suit indirect infringement claims under Fed. R. Civ. P. 12(b)(6).

## II.    PLAINTIFF'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A.    Plaintiff Has Failed to Plead Facts Plausibly Demonstrating that Samsung Had Pre-Complaint "Knowledge" Of The Patents-in-Suit

Plaintiff's May 4, 2015 letter—either alone or in combination with the other alleged communications in Plaintiff's complaint—is an insufficient basis from which the Court may "draw the reasonable inference" that Samsung had pre-suit knowledge of the patents-in-suit.  *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So that the Court has the complete set of facts on which to base its decision, Samsung has attached the May 4, 2015 letter as Exhibit A.[1]

Despite Plaintiff's repeated rhetoric that it "sent seven separate communications to Samsung" (D.I. 15 at 7) over "nearly eight months" (D.I. 15 at 1), it was not until the May 4 letter—only 52 days before filing the complaint—that Plaintiff actually identified any patents that it allegedly owns. (D.I. at 8.) The letter attaches an extensive appendix listing "more than 60 patents and additional applications worldwide" with no explanation other than that "one or more patent claims in the [appendix] is required to practice or otherwise comply with LTE standards." (Ex. A at 1.) In fact, the appendix lists 85 U.S. and foreign patents and applications. (Ex. A at 2-6.) The letter does not identify any Samsung products or allege that Samsung, or any of its customers, are infringing any of the 85 patents and applications listed in the appendix. (*Id.*) *Cf. Cascades Computer Innovation, LLC v. Samsung Electronics Co.*, 77 F. Supp. 3d 756, 766 (N.D. Ill. 2015) (granting summary judgment that a notice letter in which a patent was "merely listed in an appendix, without explanation" was "insufficient to create a triable issue as to [defendant's] knowledge at that time"). Nor does the letter "call[] to attention" any patent in particular. *See Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 499 (D. Del. 2014) (Robinson, J.) (citations omitted).

---

[1]  Because Plaintiff relies on the contents of the May 4, 2015 letter to support the factual allegations in its complaint (D.I. at ¶ 70), the Court may consider its contents in deciding a motion to dismiss. *See Spherix Inc. v. Cisco Systems, Inc.*, C.A. No. 14-393-SLR, 2015 WL 1517435, at *1 (D. Del. Mar. 31, 2015) (Robinson, J.) ("[A] court may consider the pleadings . . . and documents incorporated into the complaint by reference.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1197 (S.D. Cal. 2013) ("Because the contents of the letter are referenced in the Complaint as the basis for Defendants' knowledge, the Court may consider it.").

Simply put, the large volume of patents listed in the appendix combined with the lack of specificity and absence of any infringement allegation in the May 4 letter did not give Samsung notice or knowledge of the specific patents-in-suit. *Cf. Spherix*, 2015 WL 1517435, at *2 ("The court declines to infer knowledge of specific patents from defendant's participation in a bidding process on a portfolio containing over 6,000 patents."). Indeed, the identification of "one or more" claims from a list of 85 patents and applications only 52 days before filing a complaint is little different from the identification of one patent only one day before filing a complaint. *See, e.g., Intellectual Ventures I*, 66 F. Supp. 3d at 500 ("[N]otice of the infringement risk via the letter written only one day before the complaint was filed does not constitute a showing of objective recklessness on the part of the defendants."); *Orlando Commc'ns LLC v. LG Electronics, Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *12 (M.D. Fla. Mar. 16, 2015) ("The Court is not convinced that sending a letter merely one day before filing a lawsuit confers on a defendant the requisite knowledge for indirect infringement."). Under such circumstances it is "hard to imagine how this letter could possibly satisfy the pre-suit knowledge requirement." *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-CV-01745-VC, 2015 WL 3799533, at *2 n.1 (N.D. Cal. June 18, 2015).

The cases cited by Plaintiff are readily distinguishable. For example, the "notice letter" in *Cloud Farm* identified the full patent number in the caption line ("Re: U.S. Patent 5,437,354") and expressly discussed whether defendant's product practiced the invention described therein. *See Cloud Farm Associates, L.P. v. Volkswagen Grp. of Am., Inc.*, C.A. No. 10-502-LPS, 2012 WL 3069390, at *3 (D. Del. July 27, 2012). In contrast, Plaintiff's May 4 letter does not identify any patents or products that are allegedly infringed, much less describe how any Samsung products practice any of the patents-in-suit. And in *Elm 3DS*, the court required the combination

of knowledge of patents related to the asserted patent and the fact that the asserted patent was well known in industry to satisfy the *Iqbal* and *Twombly* pleading standards. *See Elm 3DS Innovations, LLC v. Samsung Electronics Co.*, C.A. No. 14-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015) (citing *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Here, there are no allegations that any of the patents-in-suit are well known in the industry.

In short, Plaintiff has failed to allege any facts from which the Court can reasonably infer pre-suit knowledge; as a result, Plaintiff's claim for willfulness must fail.

B.      Plaintiff Has Failed to Plead Facts Plausibly Demonstrating "Objective Recklessness"

Even assuming pre-complaint knowledge of the patents-in-suit could be inferred, the alleged facts fail to "rise to at least a showing of objective recklessness of the infringement risk." *Spherix*, 2015 WL 1517435, at *2 (granting motion to dismiss where complaint contained no facts establishing objective recklessness) (citations omitted); *In re Seagate Technology LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (plaintiff must demonstrate that alleged infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.") (citations omitted).

Plaintiff's May 4 letter does not claim that Samsung infringes any of its patents. Rather, the letter merely lists 85 U.S. and foreign patents and patent applications and claims that one or more claims in this long list is allegedly required to comply with the LTE standard. Plaintiff never identifies whether the one or more claims to which it refers is found in one of the U.S. patents, non-issued U.S. applications, foreign patents or non-issued foreign patent applications found in the appendix to the letter. Under these facts, Samsung cannot have been objectively reckless. *Cf. Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1313-14 (Fed. Cir.

2010) (affirming summary judgment that defendant "cannot have been objectively reckless" where a notice "letter from [plaintiff] no longer referred to the [asserted] patent as potentially infringed").

Plaintiff protests that that Samsung has "continu[ed] to produce LTE devices" (D.I. 15 at 9-10), but the Court cannot reasonably infer that Samsung acted with "objective recklessness" by declining to halt all production and shipments of more than 300 different LTE model numbers—none of which were identified until the filing of the complaint—within 52 days on the basis of a letter that did not allege infringement of any patent. *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *5 (N.D. Cal. May 18, 2012) ("Other than the mere suggestion that infringement continues, there are no facts in the [complaint] . . . that would support a claim of recklessness. To permit [plaintiff] to proceed in this fashion would invite claims of willfulness in every patent suit, as a matter of course, regardless of the facts."); *cf. Intellectual Ventures I*, 66 F. Supp. 3d at 500 (holding that a letter sent with insufficient time before a complaint is filed does not constitute a showing of objective recklessness).

Plaintiff's reliance on *Netgear, Inc. v. Ruckus Wireless, Inc*., 852 F. Supp. 2d 470 (D. Del. 2012) (Robinson, J.) is misplaced. There, this Court held that facts demonstrating defendant not only had knowledge of the asserted patent but had previously licensed the same asserted patent were sufficient to plead willfulness. *Netgear*, 852 F. Supp. 2d at 476-77. By contrast, Plaintiff in the instant case did not even allege infringement until the filing of its complaint.

Further, Plaintiff makes no attempt—in either its complaint or its Answering Brief—to "demonstrate[] a link between the various allegations of knowledge of the patent-in-suit and the allegations that the risks of infringement were either known or were so obvious that they should

have been known." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012). This too is fatal to its claim for willful infringement.

## III. PLAINTIFF'S PRE-COMPLAINT INDUCEMENT AND CONTRIBUTORY INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A. Plaintiff Has Failed to Plead Facts Plausibly Demonstrating that Samsung Had Pre-Complaint "Knowledge" Of The Patents-in-Suit

As explained in Section II.A, Plaintiff has not pled facts sufficient to plausibly demonstrate that Samsung had pre-complaint knowledge of the patents-in-suit. As with allegations of willful infringement, such knowledge is a prerequisite for pleading inducement and contributory infringement. *See MONEC*, 897 F. Supp. 2d at 231. Accordingly, Plaintiff's claims for pre-complaint indirect infringement should also be dismissed.

### B. Plaintiff Has Failed to Plead Facts Plausibly Demonstrating "Intent"

Even assuming pre-complaint knowledge of the patents-in-suit could be inferred, the alleged facts cannot plausibly demonstrate that Samsung "specifically intended" third parties to infringe Plaintiff's patents. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). "To appropriately plead indirect infringement, [Plaintiff] must allege knowledge of the allegedly infringing nature of the asserted conduct, both under § 271(b) ('knowledge that the induced acts constitute patent infringement') and § 271(c) ('knowledge that the combination for which [its] component was especially designed [is] both patented and infringing')." *MONEC*, 897 F. Supp. 2d at 234; *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2067-68 (2011).

Plaintiff has failed to "provide any facts plausibly showing that Defendants *specifically intended* third party infringement," because the May 4 letter "did not identify any accused device, much less tie any allegedly infringing features or designs to any particular patent." *Seoul Laser*, 957 F. Supp. 2d at 1199 (emphasis original). Indeed, Plaintiff never alleged infringement

of any patent until filing its complaint—by Samsung, its customers, or any other third party.  *See*

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-502 (JLL)(JAD), 2014 WL

3345618, at *4 (D.N.J. July 7, 2014) (dismissing with prejudice indirect infringement claims for

failure to establish the requisite intent where purported notice letter "makes no mention of

infringement"); c*f. Aspex*, 605 F.3d at 1313-14.  Without even this minimal showing, Plaintiff

cannot plausibly demonstrate "intent," irrespective of whether Samsung had knowledge of third

party activities or not.  *See Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279,

1292-93 (Fed. Cir. 2008) ("[I]nducement requires evidence of culpable conduct, directed to

encouraging another's infringement, not merely that the inducer had knowledge of the direct

infringer's activities." ) (citation omitted); *cf. Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,

24 F.3d 178, 187 (Fed. Cir. 1994) ("For purposes of section 287(a), notice must be of 'the

infringement,' not merely notice of the patent's existence or ownership.").

Plaintiff suggests that marketing alone is enough to establish "intent" for purposes of

pleading indirect infringement.  However, this Court has held that "marketing activities are not

sufficient to constitute induced infringement unless the marketing activities are coupled with

actual knowledge of the patents-in-suit and awareness that the accused products infringe the

patent-in-suit."  *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 459 (D.

Del. 2014); *MONEC*, 897 F. Supp. 2d at 234 (same); *see also Vita-Mix Corp. v. Basic Holding,*

*Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Intent can be shown by circumstantial evidence, but

the mere knowledge of possible infringement will not suffice.").  Plaintiff's case law is not to the

contrary.  In *Telecomm*, the plaintiff alleged—and the defendant did not contest—that defendant

had only post-complaint knowledge of the asserted patent.  *Telecomm Innovations, LLC v. Ricoh*

*Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013).  And in *Netgear*, this Court held that the fact

defendant had marketed its products combined with the fact that it had previously licensed the asserted patent were sufficient to plead inducement. *Netgear*, 852 F. Supp. 2d at 476. These cases are, accordingly, distinguishable.

Plaintiff also attempts to impute knowledge of infringement to Samsung based on the alleged standard-essential patent ("SEP") nature of the patents-in-suit. (D.I. 15 at 13.) This is a red herring. A European Telecommunications Standards Institute ("ETSI") intellectual property rights ("IPR") declaration does not in itself establish that a patent so declared before ETSI is actually an SEP.[2] It is not plausible, let alone reasonable to infer, that Samsung specifically intended a third party to infringe by continuing to sell "LTE devices," having received only the May 4 letter prior to the filing of the complaint.

Further, as with objective recklessness in the willful infringement context, "[w]ithout establishing the link of specific intent between Defendants' knowledge of the Asserted Patents and Defendants' inducement of the third-party infringement, Plaintiff's induced infringement claims cannot survive." *Straight Path*, 2014 WL 3345618, at *3 (citing *Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*, C.A. No. 12–1111, 2013 WL 6058472, at *1 n.5 (D. Del. Nov. 18, 2013) ("Allegations that Smith knew of Bonutti's patents and of its customers' use of Smith's products do not suffice to establish that Smith also knew that its customers' use of Smith's own products would amount to infringement of Bonutti's patents.")). Such is the case here.

---

[2] A member of ETSI may unilaterally declare that its intellectual property rights ("IPR") "may be or may become essential in relation to at least the ETSI work item(s), standards(s) and/or technical specifications(s)" identified in an IPR declaration. *See* ETSI Rules of Procedure, Annex 6 – Appendix A, IPR Licensing Declarations forms (attached as Exhibit B). Because Plaintiff relies on the contents of the ETSI IPR Policy to support the factual allegations in its Complaint (D.I. 1 at ¶¶ 15-16), the Court may consider its contents in deciding a motion to dismiss. *See supra* note 1.

Moreover, Plaintiff's conclusory assertions that Samsung was willfully blind to the alleged infringement of Plaintiff's patents over the course of the Parties' "communications" is markedly undercut by the uncontested fact that Plaintiff failed identify any patents—let alone the patents-in-suit—until the last of such communications. "A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*." *MONEC*, 897 F. Supp. 2d at 230.

Even taking into consideration the full context of the May 4 letter and the ETSI IPR Policy, Plaintiff cannot plausibly demonstrate that Samsung specifically intended third parties to infringe Plaintiff's patents prior to the filing of the instant lawsuit. Plaintiff's pre-complaint indirect infringement claims should, therefore, be dismissed.

## IV.  **CONCLUSION**

For the foregoing reasons, Samsung respectfully requests this Court to dismiss Plaintiff's claims of willful infringement and its pre-complaint inducement and contributory infringement claims pursuant to Fed. R. Civ. P. 12(b)(6).

SHAW KELLER LLP

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com

*Attorneys for Defendants*

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

Dated: October 19, 2015

# EXHIBIT A

May 4, 2015

Anthony Kahng                                    **VIA FEDERAL EXPRESS**
Vice President, Head of US IP
Samsung Electronics America, Inc.
1200 New Hampshire Avenue, N.W., Suite 550
Washington, DC  20036

      Re:    LTE Patent Portfolio Licensing

Dear Anthony:

    I am writing on behalf of Evolved Wireless, LLC to follow up on my November 4, 2014 and December 17, 2014 letters and related emails offering a license to Samsung under Evolved Wireless's patent portfolio.  As set forth in those communications, the portfolio includes more than 60 patents and additional applications worldwide that are highly relevant to current and future LTE products and services.  In addition, the use of one or more patent claims in the portfolio is required to practice or otherwise comply with LTE standards or technical specifications.  Please find attached a list of the patents and applications.

    I understand from your January 6, 2015 email that Samsung has expressed no interest in entering into a licensing discussion with Evolved Wireless.  For its part, Evolved Wireless remains willing to offer Samsung a license on fair, reasonable and non-discriminatory ("FRAND") terms to any obligated standards essential technology in its portfolio.                                Evolved Wireless also stands ready to enter into negotiations regarding non-standards obligated technology in its portfolio.

    If you have any questions, please contact me at 214-601-5390 or matt@delgiornolaw.com.

                        Sincerely,

                        Matthew DelGiorno
                        Counsel for Evolved Wireless, LLC

Enclosure
        Portfolio List

**EVOLVED WIRELESS LLC**

| Title | Country ID | Serial No. | Publication No | Patent No. | Issue Date |
|---|---|---|---|---|---|
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | US | 11/563,909 | US 2007-0177682 | 7,746,916 | 6/29/2010 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | US | 12/777,975 | US 2010-0220695 | 8,036,256 | 10/11/2011 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | US | 14/051,074 | | RE45522 | |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | US | 14/676,015 | | | |
| METHOD OF GENERATING CODE SEQUENCE, TRANSMITTING SIGNALS, APPARATUS THEREOF, CODE SEQUENCE, AND CODE SEQUENCE SET | KR | 10-2005-0114306 | KR 2007-0055845 | KR 10-1221890 | 1/8/2013 |
| CODE SEQUENCE IN THE COMMUNICATION SYSTEM, METHOD AND APPARATUS FOR TRANSMITTING, GENERATING, AND ANALYSING THE SAME | KR | 10-2006-0062467 | KR 2008-0004025 | KR 10-0930894 | 12/2/2009 |
| CODE SEQUENCE IN THE COMMUNICATION SYSTEM, METHOD AND APPARATUS FOR TRANSMITTING AND GENERATING THE SAME | KR | 10-2006-0064091 | KR 2008-0005018 | KR 10-1253164 | 4/4/2013 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | CN | 200680044410.X | CN 101361337 | ZL200680044410.X | 6/20/2012 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | WO | PCT/KR2006/005060 | WO 2007/061272 | | |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | EP | 06823768.4 | EP 1955509 | | |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | IN | 1896/KOLNP/2008 | IN 1896/KOLNP/2008 | | |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | IN | 1653/KOLNP/2014 | | | |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | JP | 2008-0542252 | JP 2009-5817915 | JP 4819130 | 9/9/2011 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | MX | MX/A/2008/005905 | | MX 279572 | 10/1/2010 |
| METHOD AND DEVICE FOR GENERATION AND TRANSFER OF CODE SEQUENCE IN SYSTEM OF WIRELESS COMMUNICATION | RU | 2008126206 | RU 2008-126206 | RU 2391789 | 6/10/2010 |
| METHOD AND APPARATUS FOR GENERATING AND TRANSMITTING CODE SEQUENCE IN A WIRELESS COMMUNICATION SYSTEM | TW | 95144311 | TW I378690 | TW I378690 | 12/1/2012 |
| Sequence Set For Used In Random Access, Method For Defining The Same, And Method and Apparatus For Transmitting Signal Using This Sequence Set | KR | 10-2006-0087290 | KR 2008-0023413 | KR 10-0937422 | 1/11/2010 |

| Title | Country ID | Serial No. | Publication No | Patent No. | Issue Date |
|---|---|---|---|---|---|
| METHOD AND APPARATUS FOR DETECTING SEQUENCE BASED ON TIME DELAY, METHOD AND APPARATUS FOR TRANSMITTING AND RECEIVING SIGNAL USING THE SAME | KR | 10-2006-0094103 | KR 2008-0028606 | KR 10-1328921 | 11/7/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | WO | PCT/KR2007/004359 | WO 2008-032959 | | |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | EP | 07808151.0 | EP 2067275 | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | DE | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | ES | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | FI | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | FR | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | GB | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | IT | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | NL | 07808151.0 | | EP 2067275 | 6/5/2013 |
| A METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON THE SEGMENTED ACCESS SCHEME, AND A METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | SE | 07808151.0 | | EP 2067275 | 6/5/2013 |
| METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON SEGMENTED ACCESS SCHEME AND METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | US | 12/440,869 | US 2009-0225701 | 7,768,965 | 8/3/2010 |

| Title | Country ID | Serial No. | Publication No | Patent No. | Issue Date |
|---|---|---|---|---|---|
| METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON SEGMENTED ACCESS SCHEME AND METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | US | 12/836,391 | US 2010-0278114 | 8,422,427 | 4/16/2013 |
| METHOD FOR TRANSMITTING AND RECEIVING SIGNALS BASED ON SEGMENTED ACCESS SCHEME AND METHOD FOR ALLOCATING SEQUENCE FOR THE SAME | US | 14/688,195 | | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | US | 11/553,939 | US 2007-0047493 | 7,809,373 | 10/5/2010 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | US | 12/870,747 | US 2010-0330998 | 8,219,097 | 7/10/2012 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | US | 14/326,637 | | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | US | 13/487,081 | US 2012-0302243 | 8,412,201 | 4/2/2013 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | US | 14/676,490 | | | |
| METHOD FOR FORWARDING RADIO CONNECTION INFORMATION IN MOBILE COMMUNICATION SYSTE | KR | 10-2006-0063135 | KR 2007-0046698 | 10-0981811 | 9/6/2010 |
| Method of transmitting and receiving radio access information in a wireless mobile communications system | AU | 2006323560 | AU 2006323560 | AU 2006323560 | 12/24/2009 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | BR | PI0617783-2 | PI0617783-2 | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | CN | 200680040518.1 | CN101300754 | ZL200680040518.1 | 2/22/2012 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | WO | PCT/KR2006/003697 | WO 2007-066882 | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | EP | 06847353.7 | EP 1943754 | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | IN | 1324/KOLNP/2008 | IN 1324/KOLNP/2008 | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | IN | 1093/KOLNP/2015 | | | |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | JP | 2008-533234 | JP 2009-510887 | JP 4677490 | 2/4/2011 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | MX | MX/A/2008/004924 | | MX 278729 | 9/6/2010 |

| Title | Country ID | Serial No. | Publication No | Patent No. | Issue Date |
|---|---|---|---|---|---|
| METHOD TO TRANSFER AND RECEIVE INFORMATION ON RADIO ACCESS IN SYSTEM OF WIRELESS MOBILE COMMUNICATION | RU | 2008-0113180 | RU 2008-113180 | RU 2411660 | 2/10/2011 |
| Method of transmitting and receiving radio access information in a wireless mobile communications systems | ZA | 200802861 | | ZA 2008/02861 | 10/28/2009 |
| METHOD OF TRANSMITTING AND RECEIVING RADIO ACCESS INFORMATION IN A WIRELESS MOBILE COMMUNICATIONS SYSTEM | TW | 95138124 | TW I354505 | I354505 | 12/11/2011 |
| METHOD FOR DATA TRANSFERRING THROUGH RANDOM ACCESS CHANNEL | KR | 10-2006-0052167 | KR 10-2007-0117928 | 10-1227505 | 1/23/2013 |
| METHOD FOR DATA TRANSFERRING THROUGH RANDOM ACCESS CHANNEL | KR | 10-2006-0057488 | KR 10-2008-0000136 | 10-1233172 | 2/7/2013 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | CN | 200780021480.8 | CN 101536445 | | |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | WO | PCT/KR2007/002784 | WO 2007-142492 | | |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | EP | 07746855.1 | EP 2030394 | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | CH | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | DE | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | DK | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | ES | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | FI | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | FR | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | GB | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | IE | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | IT | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | NL | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | SE | 07746855.1 | | EP 2030394 | 7/30/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | EP | 14002630.3 | EP 2843869 | | |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICAITON SYSTEM | JP | 2009-514211 | JP 2009-540665 | JP 5174015 | 1/11/2013 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | US | 12/303,947 | US 2010-0296436 | 8,218,481 | 7/10/2012 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | US | 13/489,408 | US 2012/0243635 | 8,683,058 | 3/25/2014 |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | US | 14/020,537 | US 2014-0003386 | 9,037,736 | |
| METHOD OF TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM | US | | US 2013-0195060 | | |
| METHOD AND APPARATUS OF TRANSMITTING DATA IN A MOBILE | TW | 96120838 | TW 200818794 | I459770 | 11/1/2014 |
| METHOD AND APPARATUS OF TRANSMITTING DATA IN A MOBILE | TW | 103113615 | TW 201503638 | | |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | US | 12/538,514 | US 2010-0035581 | 7,881,236 | 2/1/2011 |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | US | 12/972,366 | US 2011-0085509 | 8,422,410 | 4/16/2013 |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | US | 13/801,529 | US 2013-0195060 | | |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | GB | 0912850.5 | GB 2462517 | GB 2462517 | 1/5/2011 |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | KR | 10-2009-0057128 | KR 10-0939722 | 10-0939722 | 1/25/2010 |

| Title | Country ID | Serial No. | Publication No | Patent No. | Issue Date |
|---|---|---|---|---|---|
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | CA | 2,720,833 | CA 2720833 | CA 2720833 | 1/28/2014 |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | CN | 200980120004.0 | CN 10204586 | | |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | CN | 201410612502.X | | | |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | WO | PCT/KR2009/004002 | WO 2010-018930 | | |
| DATA TRANSMISSION METHOD AND USER EQUIPMENT FOR THE SAME | EP | 09166620.6 | EP 2154927 | | |
| SYSTEMS AND METHODS FOR A TRANSCEIVER TO TRANSMIT OR RECEIVE TEST INFORMATION OVER A COMMUNICATION CHANNEL USING MULTICARRIER MODULATION | US | 13/873,892 | US 2013-0243049 | 8,743,931 | 1/3/2014 |
| SYSTEMS AND METHODS FOR ESTABLISHING A DIAGNOSTIC TRANSMISSION MODE AND COMMUNICATING OVER THE SAME | US | 14/282,254 | US 2014-0254645 | | |

# EXHIBIT B

# Annex 6:     ETSI Intellectual Property Rights Policy

## 1       Introduction

The General Assembly of ETSI has established the following Intellectual Property Rights POLICY.

## 2       Definitions

Terms in the POLICY which are written in capital letters shall have the meaning set forth in Clause 15 entitled DEFINITIONS.

## 3       Policy Objectives

3.1    It is ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly. In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable. In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

3.2    IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

3.3    ETSI shall take reasonable measures to ensure, as far as possible, that its activities which relate to the preparation, adoption and application of STANDARDS and TECHNICAL SPECIFICATIONS, enable STANDARDS and TECHNICAL SPECIFICATIONS to be available to potential users in accordance with the general principles of standardization.

## 4       Disclosure of IPRs

4.1    Subject to Clause 4.2 below, each MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

4.2    The obligations pursuant to Clause 4.1 above do however not imply any obligation on MEMBERS to conduct IPR searches.

4.3    The obligations pursuant to Clause 4.1 above are deemed to be fulfilled in respect of all existing and future members of a PATENT FAMILY if ETSI has been informed of a member of this PATENT FAMILY in a timely fashion. Information on other members of this PATENT FAMILY, if any, may be voluntarily provided.

## 5       Procedures for Committees

ETSI shall establish guidelines for the chairmen of COMMITTEES with respect to ESSENTIAL IPRs.

## 6       Availability of Licences

6.1    When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the

owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent:

- MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;

- sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

- repair, use, or operate EQUIPMENT; and

- use METHODS.

The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate.

6.1bis    Transfer of ownership of ESSENTIAL IPR

FRAND licensing undertakings made pursuant to Clause 6 shall be interpreted as encumbrances that bind all successors-in-interest. Recognizing that this interpretation may not apply in all legal jurisdictions, any Declarant who has submitted a FRAND undertaking according to the POLICY who transfers ownership of ESSENTIAL IPR that is subject to such undertaking shall include appropriate provisions in the relevant transfer documents to ensure that the undertaking is binding on the transferee and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding all successors-in-interest. The undertaking shall be interpreted as binding on successors-in-interest regardless of whether such provisions are included in the relevant transfer documents.

6.2    An undertaking pursuant to Clause 6.1 with regard to a specified member of a PATENT FAMILY shall apply to all existing and future ESSENTIAL IPRs of that PATENT FAMILY unless there is an explicit written exclusion of specified IPRs at the time the undertaking is made. The extent of any such exclusion shall be limited to those explicitly specified IPRs.

6.3    As long as the requested undertaking of the IPR owner is not granted, the COMMITTEE Chairmen should, if appropriate, in consultation with the ETSI Secretariat use their judgment as to whether or not the COMMITTEE should suspend work on the relevant parts of the STANDARD or TECHNICAL SPECIFICATION until the matter has been resolved and/or submit for approval any relevant STANDARD or TECHNICAL SPECIFICATION.

6.4    At the request of the European Commission and/or EFTA, initially for a specific STANDARD or TECHNICAL SPECIFICATION or a class of STANDARDS/TECHNICAL SPECIFICATIONS, ETSI shall arrange to have carried out in a competent and timely manner an investigation including an IPR search, with the objective of ascertaining whether IPRs exist or are likely to exist which may be or may become ESSENTIAL to a proposed STANDARD or TECHNICAL SPECIFICATIONS and the possible terms and conditions of licences for such IPRs. This shall be subject to the European Commission and/or EFTA meeting all reasonable expenses of such an investigation, in accordance with detailed arrangements to be worked out with the European Commission and/or EFTA prior to the investigation being undertaken.

# 6bis    Use of the IPR Licensing Declaration Forms

MEMBERS shall use one of the ETSI IPR Licensing Declaration forms at the Appendix to this ETSI IPR Policy to make their IPR licensing declarations.

# 7    Information on IPR by ETSI

7.1    Any published STANDARD or TECHNICAL SPECIFICATION shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication.

7.2   ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI.

# 8   Non-availability of Licences

8.1   Non-availability of licences prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION

8.1.1   Existence of a viable alternative technology

Where prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION an IPR owner informs ETSI that it is not prepared to license an IPR in respect of a STANDARD or TECHNICAL SPECIFICATION in accordance with Clause 6.1 above, the General Assembly shall review the requirement for that STANDARD or TECHNICAL SPECIFICATION and satisfy itself that a viable alternative technology is available for the STANDARD or TECHNICAL SPECIFICATION which:

- is not blocked by that IPR; and

- satisfies ETSI's requirements.

8.1.2   Non-existence of a viable alternative technology

Where, in the opinion of the General Assembly, no such viable alternative technology exists, work on the STANDARD or TECHNICAL SPECIFICATION shall cease, and the Director-General of ETSI shall observe the following procedure:

a)   If the IPR owner is a MEMBER,

   i)   the Director-General of ETSI shall request that MEMBER to reconsider its position.

   ii)   If that MEMBER however decides not to withdraw its refusal to license the IPR, it shall then inform the Director-General of ETSI of its decision and provide a written explanation of its reasons for refusing to license that IPR, within three months of its receipt of the Director-General's request.

   iii)   The Director-General of ETSI shall then send the MEMBER's explanation together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

b)   If the IPR owner is a third party,

   i)   the Director-General of ETSI shall, wherever appropriate, request full supporting details from any MEMBER who has complained that licences are not available in accordance with Clause 6.1 above and/or request appropriate MEMBERS to use their good offices to find a solution to the problem.

   ii)   Where this does not lead to a solution the Director-General of ETSI shall write to the IPR owner concerned for an explanation and request ultimately that licences be granted according to Clause 6.1 above.

   iii)   Where the IPR owner refuses the Director-General's request and decides not to withdraw its refusal to license the IPR or does not answer the letter within three months after the receipt of the Director-General's request, the Director-General shall then send the IPR owner's explanation, if any,

together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

8.1.3    Prior to any decision by the General Assembly, the COMMITTEE should in consultation with the ETSI Secretariat use their judgment as to whether or not the COMMITTEE should pursue development of the concerned parts of the STANDARD or a TECHNICAL SPECIFICATION based on the non-available technology and should look for alternative solutions.

8.2    Non-availability of licences after the publication of a STANDARD or a TECHNICAL SPECIFICATION

Where, in respect of a published STANDARD or TECHNICAL SPECIFICATION, ETSI becomes aware that licences are not available from an IPR owner in accordance with Clause 6.1 above, that STANDARD or TECHNICAL SPECIFICATION shall be referred to the Director-General of ETSI for further consideration in accordance with the following procedure:

i)    The Director-General shall request full supporting details from any MEMBER or third party who has complained that licences are not available in accordance with Clause 6.1 above.

ii)    The Director-General shall write to the IPR owner concerned for an explanation and request that licences be granted according to Clause 6.1 above.  Where the concerned IPR owner is a MEMBER, it shall inform the Director-General of ETSI of its decision and provide a written explanation of its reasons in case of continuing refusal to license that IPR.

iii)    Where the IPR owner refuses the Director-General's request or does not answer the letter within three months, the Director-General shall inform the General Assembly and, if available, provide the General Assembly with the IPR owner's explanation for consideration. A vote shall be taken in the General Assembly on an individual weighted basis to immediately refer the STANDARD or TECHNICAL SPECIFICATION to the relevant COMMITTEE to modify it so that the IPR is no longer ESSENTIAL.

iv)    Where the vote in the General Assembly does not succeed, then the General Assembly shall, where appropriate, consult the ETSI Counsellors with a view to finding a solution to the problem. In parallel, the General Assembly may request appropriate MEMBERS to use their good offices to find a solution to the problem.

v)    Where (iv) does not lead to a solution, then the General Assembly shall request the European Commission to see what further action may be appropriate, including non-recognition of the STANDARD or TECHNICAL SPECIFICATION in question.

In carrying out the foregoing procedure due account shall be taken of the interest of the enterprises that have invested in the implementation of the STANDARD or TECHNICAL SPECIFICATION in question.

# 9    ETSI ownership of IPRs

9.1    The ownership of the copyright in STANDARDS and TECHNICAL SPECIFICATIONS documentation and reports created by ETSI or any of its COMMITTEES shall vest in ETSI but due acknowledgement shall be given to copyrights owned by third parties that are identifiable in ETSI copyrighted works.

9.2    In general, in the absence of any exceptional circumstances, where SOFTWARE is included in any element of a STANDARD or TECHNICAL SPECIFICATION there shall be no requirement to use that SOFTWARE for any purpose in order for an implementation to conform to the STANDARD or TECHNICAL SPECIFICATION.

9.2.1    Without prejudice to Clause 9.1, any MEMBER contributing SOFTWARE for inclusion in a STANDARD    or    TECHNICAL    SPECIFICATION    hereby    grants,    without    monetary

compensation or any restriction other than as set out in this Clause 9.2.1, an irrevocable, non-exclusive, worldwide, royalty-free, sub-licensable copyright licence to prepare derivative works of (including translations, adaptations, alterations) the contributed SOFTWARE and reproduce, display, distribute and execute the contributed SOFTWARE and derivative works for the following limited purposes:

a) to ETSI and MEMBERS to evaluate the SOFTWARE and any derivative works thereof for determining whether to support the inclusion of the SOFTWARE in that STANDARD or TECHNICAL SPECIFICATION;

b) to ETSI to publish the SOFTWARE in that STANDARD or TECHNICAL SPECIFICATION; and

c) to any implementer of that STANDARD or TECHNICAL SPECIFICATION to evaluate the SOFTWARE and any derivative works thereof for inclusion in its implementation of that STANDARD or TECHNICAL SPECIFICATION, and to determine whether its implementation conforms with that STANDARD or TECHNICAL SPECIFICATION.

9.2.2 (i) The copyright licence granted in Clause 9.2.1 shall also extend to any implementer of that STANDARD or TECHNICAL SPECIFICATION for the purpose of using the SOFTWARE in any compliant implementation unless (ii) the contributing MEMBER gives an irrevocable undertaking in writing at the time of contribution that it is prepared to grant an irrevocable copyright licence on fair, reasonable and non-discriminatory terms and conditions for the purpose of using the SOFTWARE in any compliant implementation.

9.2.3 Any MEMBER contributing SOFTWARE for inclusion in a STANDARD or TECHNICAL SPECIFICATION represents and warrants that to the best of its knowledge, it has the necessary copyright rights to license that contribution under Clause 9.2.1 and 9.2.2 to ETSI, MEMBERS and implementers of the STANDARD or TECHNICAL SPECIFICATION.

Other than as expressly provided in this Clause 9.2.3: (1) SOFTWARE contributed for inclusion in a STANDARD or TECHNICAL SPECIFICATION is provided "AS IS" with no warranties, express or implied, including but not limited to, the warranties of merchantability, fitness for a particular purpose and non infringement of intellectual property rights and (2) neither the MEMBER contributing SOFTWARE nor ETSI shall be held liable in any event for any damages whatsoever (including, without limitation, damages for loss of profits, business interruption, loss of information, or any other pecuniary loss) arising out of or related to the use of or inability to use the SOFTWARE.

9.2.4 With respect to the copyright licenses set out in Clause 9.2.1 and 9.2.2 , no patent licence is granted by implication, estoppel or otherwise.

9.3 In respect of IPRs other than copyright in STANDARDS and TECHNICAL SPECIFICATIONS documentation and reports, ETSI shall only seek ownership of IPRs generated either by its employees or by secondees to ETSI from organizations who are not MEMBERS.

9.4 ETSI shall, on request by a non-member, grant licences to that non-member on fair and reasonable terms and conditions in respect of any IPRs, other than those referred to in Clause 9.1 above, owned by ETSI. MEMBERS shall be allowed to use IPRs owned by ETSI free of charge.

# 10    Confidentiality

The proceedings of a COMMITTEE shall be regarded as non-confidential except as expressly provided below and all information submitted to a COMMITTEE shall be treated as if non-confidential and shall be available for public inspection unless:

● the information is in written or other tangible form; and

● the information is identified in writing, when submitted, as confidential; and

- the information is first submitted to, and accepted by, the chairman of the COMMITTEE as confidential.

CONFIDENTIAL INFORMATION incorporated in a STANDARD or TECHNICAL SPECIFICATION shall be regarded as non-confidential by ETSI and its MEMBERS, from the date on which the STANDARD or TECHNICAL SPECIFICATION is published.

## 11 Reproduction of Standards Documentation

MEMBERS may make copies of STANDARDS and TECHNICAL SPECIFICATIONS documentation produced by ETSI for their own use free of charge but may not distribute such copies to others.

## 12 Law and Regulation

The POLICY shall be governed by the laws of France. However, no MEMBER shall be obliged by the POLICY to commit a breach of the laws or regulations of its country or to act against supranational laws or regulations applicable to its country insofar as derogation by agreement between parties is not permitted by such laws.

Any right granted to, and any obligation imposed on, a MEMBER which derives from French law and which are not already contained in the national or supranational law applicable to that MEMBER is to be understood as being of solely a contractual nature.

## 13 Policy Decisions

Without prejudice to ETSI's Statutes and Rules of Procedure, no decisions shall be taken by ETSI in relation to implementation of the POLICY unless supported by a 71 % majority of the weighted individual votes cast by MEMBERS.

## 14 Violation of Policy

Any violation of the POLICY by a MEMBER shall be deemed to be a breach, by that MEMBER, of its obligations to ETSI. The ETSI General Assembly shall have the authority to decide the action to be taken, if any, against the MEMBER in breach, in accordance with the ETSI Statutes.

## 15 Definitions

1 "**AFFILIATE**" of a first legal entity means any other legal entity:

- directly or indirectly owning or controlling the first legal entity, or

- under the same direct or indirect ownership or control as the first legal entity, or

- directly or indirectly owned or controlled by the first legal entity,

for so long as such ownership or control lasts.

Ownership or control shall exist through the direct or indirect:

- ownership of more than 50 % of the nominal value of the issued equity share capital or of more than 50 % of the shares entitling the holders to vote for the election of directors or persons performing similar functions, or

- right by any other means to elect or appoint directors, or persons who collectively can exercise such control. A state, a division of a state or other public entity operating under public law, or any legal entity, linked to the first legal entity solely through a state or any division of a state or other public entity operating under public law, shall be deemed to fall outside the definition of an AFFILIATE.

2    "**COMMITTEE**" shall mean any Technical Body of ETSI and shall include ETSI Projects, Technical Committees, ETSI Partnership Projects, and their Working Groups.

3    "**CONFIDENTIAL INFORMATION**" shall mean all information deemed to be confidential pursuant to Clause 10 of the POLICY disclosed directly or indirectly to the MEMBER.

4    "**EQUIPMENT**" shall mean any system, or device fully conforming to a STANDARD.

5    "**METHODS**" shall mean any method or operation fully conforming to a STANDARD.

6    "**ESSENTIAL**" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

7    "**IPR**" shall mean any intellectual property right conferred by statute law including applications therefor other than trademarks. For the avoidance of doubt rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR.

8    "**MANUFACTURE**", shall mean production of EQUIPMENT.

9    "**MEMBER**" shall mean a member or associate member of ETSI. References to a MEMBER shall wherever the context permits be interpreted as references to that MEMBER and its AFFILIATES.

10   "**POLICY**" shall mean ETSI's Intellectual Property Rights Policy.

11   "**STANDARD**" shall mean any standard adopted by ETSI including options therein or amended versions and shall include European Standards (ENs), ETSI Standards (ESs), Common Technical Regulations (CTRs) which are taken from ENs and including drafts of any of the foregoing, and documents made under the previous nomenclature, including ETSs, I-ETSs, parts of NETs and TBRs, the technical specifications of which are available to all MEMBERS, but not including any standards, or parts thereof, not made by ETSI.

The date on which a STANDARD is considered to be adopted by ETSI for the purposes of this POLICY shall be the date on which the technical content of that STANDARD was available to all MEMBERS.

12   "**TECHNICAL SPECIFICATION**" shall mean any Technical Specification (TS) adopted by ETSI including options therein or amended version including drafts, the Technical Specifications of which are available to all MEMBERS, but not including any technical specifications, or parts thereof, not made by ETSI.

The date on which a TECHNICAL SPECIFICATION is considered to be adopted by ETSI for the purposes of this POLICY shall be the date on which the technical content of that TECHNICAL SPECIFICATION was available to all MEMBERS.

13   "**PATENT FAMILY**" shall mean all the documents having at least one priority in common, including the priority document(s) themselves.  For the avoidance of doubt, "documents" refers to patents, utility models, and applications therefor.

14   For the purpose of this IPR Policy, "**SOFTWARE**" shall mean:

- a set of instructions written in any programming language that either directly, or when further compiled, performs a function when executed by hardware that processes data according to instructions, such as an audio or video CODEC; but also

- data and stream structure definitions, such as ASN.1, TTCN, or XML data representations; and

- schema examples, such as SDL diagrams and data flow charts;

which can be transformed, either directly, or when further compiled, into usable/implementable code.

**Annex 6 - Appendix A:    IPR Licensing Declaration forms**

---

**IPR HOLDER / ORGANISATION ("Declarant")**

Legal Name: _____

**CONTACT DETAILS FOR LICENSING INFORMATION:**

Name and Title: _____

Department: _____

Address: _____

_____

Telephone: _____    Fax: _____

Email: _____    URL: _____

**GENERAL IPR LICENSING DECLARATION**

In accordance with Clause 6.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby informs ETSI that *(check one box only)*:

☐        with reference to ETSI STANDARD(S) or TECHNICAL SPECIFICATION(S) No.:

_____ , or

☐        with reference to ETSI Project(s): _____ , or

☐        with reference to all ETSI STANDARDS AND TECHNICAL SPECIFICATIONS

and with reference to *(check one box only)*:

☐        IPR(s) contained within technical contributions made by the Declarant and/or its AFFILIATES, or

☐        any IPRs

the Declarant hereby irrevocably declares that (1) it and its AFFILIATES are prepared to grant irrevocable licenses under its/their IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD(S), TECHNICAL SPECIFICATION(S), or the ETSI Project(s), as identified above, to the extent that the IPR(s) are or become, and remain ESSENTIAL to practice that/those STANDARD(S) or TECHNICAL SPECIFICATION(S) or, as applicable, any STANDARD or TECHNICAL SPECIFICATION resulting from proposals or Work Items within the current scope of the above identified ETSI Project(s), for the field of use of practice of such STANDARD or TECHNICAL SPECIFICATION; and (2) it will comply with Clause 6.1bis of the ETSI IPR Policy with respect to such ESSENTIAL IPR(s).

☐        This irrevocable undertaking is made subject to the condition that those who seek licences agree to reciprocate *(check box if applicable)*.

The construction, validity and performance of this General IPR licensing declaration shall be governed by the laws of France.

Terms in ALL CAPS on this form have the meaning provided in Clause 15 of the ETSI IPR Policy.

**SIGNATURE**

By signing this General IPR Licensing Declaration form, you represent that you have the authority to bind the Declarant and/or its AFFILIATES to the representations and commitments provided in this form.

Name of authorized person: _____

Title of authorized person: _____

Place, Date: _____

Signature: _____

*Please return this form duly signed to: ETSI Director-General*
*ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex – France / Fax. +33 (0) 4 93 65 47 16*

# IPR INFORMATION STATEMENT AND LICENSING DECLARATION

## IPR HOLDER / ORGANISATION ("Declarant")

Legal Name: _____

## CONTACT DETAILS FOR LICENSING INFORMATION:

Name and Title: _____
Department: _____
Address: _____
_____
_____

Telephone: _____ Fax: _____
Email: _____ URL: _____

## IPR INFORMATION STATEMENT

In accordance with Clause 4.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby informs ETSI that it is the Declarant's and/or its AFFILIATES' present belief that the IPR(s) disclosed in the attached *IPR Information Statement Annex* may be or may become ESSENTIAL in relation to at least the ETSI Work Item(s), STANDARD(S) and/or TECHNICAL SPECIFICATION(S) identified in the attached *IPR Information Statement Annex.*

The Declarant and/or its AFFILIATES *(check one box only)*:

☐      are the proprietor of the IPR(s) disclosed in the attached *IPR Information Statement Annex.*

☐      are not the proprietor of the IPR(s) disclosed in the attached *IPR Information Statement Annex.*

## IPR LICENSING DECLARATION

In accordance with Clause 6.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby irrevocably declares the following *(check one box only, and subordinate box, where applicable)*:

☐      To the extent that the IPR(s) disclosed in the attached *IPR Information Statement Annex* are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached *IPR Information Statement Annex*, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy.

     ☐      This irrevocable undertaking is made subject to the condition that those who seek licences agree to reciprocate **(check box if applicable).**

☐      The Declarant and/or its AFFILIATES are not prepared to make the above IPR Licensing Declaration (reasons may be explained in writing in the attached *IPR Licensing Declaration Annex*).

The construction, validity and performance of this IPR information statement and licensing declaration shall be governed by the laws of France.

Terms in ALL CAPS on this form have the meaning provided in Clause 15 of the ETSI IPR Policy.

## SIGNATURE

By signing this IPR Information Statement and Licensing Declaration form, you represent that you have the authority to bind the Declarant and/or its AFFILIATES to the representations and commitments provided in this form.

Name of authorized person: _____
Title of authorized person: _____
Place, Date: _____
Signature: _____

*Please return this form duly signed to: ETSI Director-General*
*ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex – France / Fax. +33 (0) 4 93 65 47 16*

# IPR Information Statement Annex

| STANDARD, TECHNICAL SPECIFICATION or ETSI Work Item | | | | | | | | | FURTHER INFORMATION Other members of this PATENT FAMILY, if any * | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Project or Standard name | Work Item or Standard No. | Illustrative Specific part of the standard (e.g. Section) | Version (V.X.X.X) | Proprietor | Application No. | Publication No. | Patent/Application Title | Country of registration | Application No. | Publication No. | Country of registration |
| e.g. UMTS | ETSI TS 125 215 | 6.1.1.2 | V.3.5.0 | Abcd | | EP 1131972 | Scheduling of slotted-mode related measurements | EPC CONTRACTING STATES [ | | AU 1274000 | Australia |
| | | | | | | | | | | CN 99813100.8 | China P.R |
| | | | | | | | | | | FI 108270 | Finland |
| | | | | | | | | | | JP 11-318161 | Japan |
| | | | | | | | | | | US 6532226 | USA |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

* Information on other members of a PATENT FAMILY is provided voluntarily (Clause 4.3 of the ETSI IPR Policy).

# IPR Licensing Declaration Annex

| Optional written explanation of reasons for not making the IPR Licensing Declaration |
|---|

☐ The Declarant and/or its AFFILIATES are unwilling to grant irrevocable licences under the IPR(s) disclosed in the attached *IPR Information Statement Annex* on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy.

☐ The Declarant and/or its AFFILIATES are unable to grant irrevocable licences under the IPR(s) disclosed in the attached *IPR Information Statement Annex* on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, because

　☐ the Declarant and/or its AFFILIATES are not the proprietor of the IPR(s) disclosed in the attached *IPR Information Statement Annex*,

　☐ the Declarant and/or its AFFILIATES do not have the ability to licence the IPR(s) disclosed in the attached *IPR Information Statement Annex* on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy. In this case, please provide Contact information of those who may have this ability:

Legal Name: _____

Name and Title: _____

Department: _____

Address: _____

_____

Telephone: _____ Fax: _____

Email: _____

☐ Other reasons (please specify):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Please return this form together with the "IPR Information Statement and Licensing Declaration form" to:*
*ETSI Director-General*
*ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex – France / Fax. +33 (0) 4 93 65 47 16*

# CERTIFICATE OF SERVICE

I, Andrew E. Russell, hereby certify that on October 19, 2015, this document was served

on the person listed below in the manner indicated:

**BY EMAIL**

Brian E. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Christopher K. Larus
Andrea L. Gothing
Ryan M. Schultz
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
 (612) 349-8500
clarus@robinskaplan.com
agothing@robinskaplan.com
rschultz@robinskaplan.com
rbenson@orrick.com

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendants*