

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**Bindu A. Palapura**
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone
302 658-1192 Firm Fax

March 3, 2016

**VIA ELECTRONIC FILING**
The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

    Re:    *Evolved Wireless, LLC v. Apple, Inc.*, *et al.*
             C.A. Nos. 15-542, 15-543, 15-544, 15-545, 15-546, 15-547 (SLR-SRF)

Dear Judge Fallon:

    Defendants Apple Inc., HTC Corporation, HTC America Inc., Lenovo Group Ltd., Lenovo (United States) Inc., Motorola Mobility LLC, Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., ZTE Corp., ZTE (USA) Inc., ZTE Solutions Inc., Microsoft Corp., Microsoft Mobile Oy, and Microsoft Mobile Inc. ("Defendants") submit this letter in connection with the discovery conference set for March 8, 2016 at 3:00 p.m., concerning the parties' disputes with respect to the proposed Protective Order attached as Exhibit 1 hereto.

## I. Litigation Background

    On June 25, 2015, Plaintiff Evolved Wireless LLC ("Plaintiff") filed six separate actions against Defendants alleging infringement of five patents declared essential to the 3GPP Long Term Evolution ("LTE") wireless standard. Each Defendant is alleged to have infringed the patents-in-suit by manufacturing, using, or selling certain mobile devices that comply with the LTE standard.

    Plaintiff is a non-practicing entity ("NPE"): it neither manufactures nor sells commercial products, and its only business appears to be acquiring, licensing, and litigating patents. Plaintiff's website identifies no current or future products, and touts only Plaintiff's purported "high quality patent portfolio."[1] Indeed, Plaintiff holds itself out not as a participant in the wireless communications industry, but as a "technology innovation and licensing company."[2]

## II. Argument

### A. Defendants' Proposed Unilateral Prosecution Bar is Necessary to Guard Against the Risk of Misuse of Defendants' Confidential Information.

    The parties agree that a patent prosecution bar is appropriate, but disagree as to whether that bar should be bilateral (*i.e.*, applicable to both Plaintiff's counsel and Defendants' counsel), or unilateral (*i.e.*, applicable only to Plaintiff's counsel). The parties further disagree as to the scope of activities prohibited by the prosecution bar, and whether the bar should be lifted with

---

[1] *See* http://evolvedwirelessllc.com/technology.html (last visited February 29, 2016).
[2] *See* http://evolvedwirelessllc.com/index.html (last visited February 29, 2016).

respect to a particular individual when that person ceases to represent or be associated with the Receiving Party.[3]

1. *The Prosecution Bar Should Apply Only to Plaintiff's Counsel.*

The purpose of a patent prosecution bar is to guard against the risk of inadvertent disclosure or use of competitive information learned during litigation. *See In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1380 (Fed. Cir. 2010). In particular, a prosecution bar prevents a patent holder from using another party's proprietary information during patent prosecution or post-grant challenge proceedings to craft claims that read on the disclosing party's products. *Id.* at 1381. A party seeking imposition of a prosecution bar must demonstrate that "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381.

It is undisputed that a prosecution bar applicable to Plaintiff is appropriate and necessary in this case, as there is a considerable risk that, absent such a bar, Plaintiff's litigation counsel could inadvertently (or otherwise) disclose or make use of Defendants' confidential technical information in the prosecution or amendment of claims. (*See* Ex. 1, §6(b).) As discovery progresses, Defendants expect to produce highly confidential and competitively sensitive information regarding the accused products, which include cellular phones and other wireless devices that comply with the LTE standards. There is little doubt that such confidential information would be of extraordinary value in the prosecution context to Plaintiff, "whose business model hinges on the ability to acquire intellectual property and enforce it against other entities using the allegedly infringing technology." *See ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, C.A. No. 07-346, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008). Accordingly, the proposed prosecution bar is, as applied to Plaintiff, both reasonable and proportionate with the risk of disclosure. *See, e.g.*, *DN Lookup Technologies v. Charter Communications, Inc.*, C.A. No. 11-1177-LPS, Tr. at 30:21-31:16 (D. Del. June 11, 2012) (Ex. 2) (rejecting plaintiff's request for a bilateral prosecution bar where the plaintiff was a non-practicing entity); *Ventronics Sys., LLC v. Drager Medical GmbH*, C.A. No. 11-1114-RGA, Tr. at 29-30 (D. Del. Dec. 29, 2011) (Ex. 3) (same).

By contrast, there is no justification for imposing a prosecution bar on Defendants. As a NPE, Plaintiff does not manufacture or sell any products or offer any services in the wireless communications industry. Further, Plaintiff was not involved in the alleged inventions claimed in the patents-in-suit; rather, Plaintiff acquired the patents from non-party LG Electronics. Thus, Plaintiff will have little or no technical information of its own to produce, and, to the extent it has such information, it will concern only the now-stale applications for the patents-in-suit. Moreover, because Plaintiff is a NPE, there is no risk that a Defendant would use such information to obtain or prosecute patents to assert against Plaintiff. *Cf. Ventronics Sys.*, C.A. No. 11-1114-RGA, Tr. at 29-30 (Ex. 3) (imposing a unilateral prosecution bar).

During the meet and confer process, the only argument Plaintiff raised in favor of a bilateral prosecution bar boiled down to, "what is good for the goose is good for the gander." As Judge Andrews noted in *Ventronics*, this argument carries no weight after the Federal Circuit's decision in *Deutsche Bank*, "because it fails to take into account any differences between the

---

[3] Due to space constraints, this letter focuses on two disputed sections of the proposed Protective order: (1) Section 6(b), which relates to the patent prosecution bar, and (2) Section 11, which relates to the treatment of source code.

goose and the gander." *Ventronics Sys.*, C.A. No. 11-1114-RGA, Tr. at 30:4-8 (Ex. 3); *see also Deutsche Bank*, 605 F.3d at 1378 (imposition or denial of each proposed prosecution bar "must be determined . . . by the facts on a counsel-by-counsel basis"). Here, there is no symmetry between the parties, and there is no justification for imposing a symmetrical prosecution bar.

2. *The Prosecution Bar Should Limit Plaintiff's Participation in IPR.*

The types of "Prosecution Activity" covered by the prosecution bar should include not only activities relating to the preparation or amendment of claims as part of an original patent application, but also activities related to the preparation or amendment of claims in *Inter Partes* Review ("IPR") proceedings. Although a patentee may not broaden its claims during IPR, Plaintiff could still use Defendants' confidential technical information in redrawing its claims through amendments. The prosecution bar should therefore extend to the preparation or amendment of claims, or advice or counseling regarding the preparation of claims or amendment of claims, in any proceeding in which Plaintiff would have the opportunity to amend its claims, including original prosecution, IPRs, reissue, and reexamination.

3. *The Prosecution Bar Should Not Be Lifted When an Individual Ceases to Represent the Receiving Party*

Plaintiff proposes that the prosecution bar should be lifted with respect to a particular individual simply by virtue of that person's ceasing to represent or remain affiliated with the Receiving Party. (*See* Ex. 1, § 6(b).) This proposal would significantly undermine the protections offered by the prosecution bar and greatly increase the risk that Defendants' confidential technical information would be misused by permitting an individual having received such information to prosecute patents merely because they withdrew as counsel or changed jobs. Thus, for all of the same reasons that the proposed prosecution bar applicable to Plaintiff is appropriate and necessary, Plaintiff's proposal should not be adopted.

### B. Good Cause Supports Defendants' Proposed Source Code Protections

Each Defendant's source code is kept as a closely-guarded trade secret. Indeed, for many Defendants—including in particular Apple—source code is their most valuable asset. If Defendants' source code were to be disseminated in any manner, even inadvertently, Defendants would face potentially devastating competitive harm. Furthermore, the strict confidentiality of Defendants' source code helps to keep their products secure from hacking and other threats. Any breach of security would result in grave and irreparable harm that could affect not only Defendants, but millions of consumers. Despite this, Plaintiff seeks to weaken significantly the protections afforded source code for no reason other than its own convenience.

1. *Plaintiff Should not be Permitted to Run Perl Scripts on the Review Machines, and Defendants Should not be Required to Install Special Review Tools.*

Plaintiff proposes that it should be permitted to run on Review Machines its own custom software written in the Perl programming language, purportedly to facilitate its analysis of Defendants' source code. (Ex. 1, § 11(c)(v).) But allowing Plaintiff to run this software would compromise the integrity of security measures intended to protect Defendants' trade secret source code. Such automated analysis of Defendants' source code is neither necessary nor consistent with the need to maintain the confidentiality and security of Defendants' source code.

Plaintiff's proposal also unnecessarily requires Defendants to produce source code in a form other than how it is kept in the ordinary course of the producing parties' business. (Ex. 1, § 11(c)(1).) In particular, Plaintiff insists that it be provided with a manifest describing the

contents of the source code, and that Defendants provide specific tools for source code review that are native to the Windows operating system. Not only are such tools unnecessary for source code review, they are, at least for Apple, not natively available on the operating system (Mac OS) that will be installed on the Review Machine. By contrast, Defendants' proposal more reasonably requires that the Producing Party install only tools that are sufficient for viewing and searching the code to be produced, and permits the reviewing party to request that additional tools be installed on the machine upon 10 days advance notice.

2. *Plaintiff's Proposals Regarding Printing, Using, and Filing Copies of Source Code Should be Rejected.*

Plaintiff proposes that it be provided with a laser printer attached to each Review Machine with which it can print large sections of Defendants' source code. (Ex. 1, § 11(c)(v).) Under either sides' proposal, however, Plaintiff will have essentially unlimited rights to review Defendants' source code on the Review Machines, subject only to reasonable notice requirements and business hour restrictions. Thus, it is simply not necessary for Plaintiff to print large sections of Defendants' source code to review at a later time. *Linex Tech Inc. v. Hewlett Packard Co.*, No. C 13-00159, 2013 WL 1820909, at *2 (N.D. Cal. Apr. 30, 2013) (imposing a limit on the number of pages of source code a reviewing party could print). Moreover, Plaintiff's proposals regarding the time provided for a producing party to review and object to production of printed source code is simply unworkable: Plaintiff proposes providing the producing party less than 24 hours to review the reviewing parties' printed portions of highly technical source code and make a determination of its relevance. (Ex. 1, § 11(c)(v).) This would essentially require Defendants to have their own experts on site to review Plaintiff's printouts any time that Plaintiff sought to review and print source code. Similarly, Plaintiff's proposals regarding the use of source code at depositions and attaching source code to expert reports and court filings fail to provide adequate opportunities for Defendants to monitor and object to the use of their source code. (*See* Ex. 1, §§ 11(c)(xi), 11(c)(xii).)

3. *Defendants Should not be Required to Produce Source Code in Delaware.*

Plaintiff's proposal functionally requires that any source code that is produced by a party shall be made available at the Delaware offices of outside counsel. Plaintiff contends that such a restriction is appropriate because it creates more efficient travel for Plaintiff to review the source code of the many different Defendants. But any inefficiencies are a logistical problem of Plaintiff's own making—*i.e.*, a consequence of its decision to sue many unrelated companies in this District. There is no justification for shifting the travel burden from Plaintiff to Defendants. *See, e.g.*, *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-00193 (LPS) (D. Del. Dec. 16, 2013) (Ex. 4) (denying plaintiff's request to require multiple defendants with geographically diverse operations to produce source code at a location convenient to plaintiffs). Further, Plaintiff's proposal would impose on Defendants significant burdens associated with preparing and clearing secure locations for Review Machines to be made available. For example, many Defendants have strict security requirements for the rooms in which Review Machines will be made available. While Defendants are prepared to produce Review Machines in the offices of their outside counsel identified in Defendants' proposal, it would be an expensive and time-consuming undertaking to prepare additional locations in Delaware for source code review.

For these reasons, Defendants respectfully request that the Court adopt Defendants' proposed Protective Order.

Respectfully,

*/s/ Bindu A. Palapura*

Bindu A. Palapura

BAP:nmt/1217948/42922

Enclosures

cc: Clerk of the Court (via hand delivery, w/encls.)
     Counsel of Record (via CM/ECF, w/encls.)