**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EVOLVED WIRELESS, LLC,       ) | |
|                ) | |
|     Plaintiff,     ) | |
|                ) | |
|     v.     ) | C.A. No. 15–545–SLR–SRF |
|                ) | |
| SAMSUNG ELECTRONICS CO., LTD.  ) | |
| and SAMSUNG ELECTRONICS     ) | |
| AMERICA, INC.,     ) | |
|                ) | |
|     Defendants.     ) | |

**EVOLVED WIRELESS'S NOTICE OF
DEPOSITION OF SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG
ELECTRONICS AMERICA, INC. PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) (TOPIC NOS. 1-41)**

Please take notice that Plaintiff Evolved Wireless LLC ("Evolved Wireless") will take the

deposition of one or more person designated by Defendants Samsung Electronics Co., Ltd and

Samsung Electronics America, Inc. (collectively "Defendant"), under Federal Rules of Civil

Procedure 26 and 30, regarding the topics set forth below, reserving all rights and intending to

issue further notices containing additional topics based upon Defendant's responses to discovery

requests. Such deposition or depositions will commence at 9:00 a.m. on November 1, 2016 in a

location determined by the parties. The deposition will continue from day to day thereafter and

shall be taken before an officer qualified to administer oaths under the Federal Rules of Civil

Procedure. The examination will be recorded by stenographic means, LiveNote or similar

functionality, and/or by videotape, and will continue from day to day until completed.

Under Federal Rule of Civil Procedure 30(b)(6), Defendant are required to designate one

or more officers, directors, or managing agents or other persons who consent to testify on their

behalf regarding the topics below. Failure to designate a person who is prepared to provide full

1

and complete testimony regarding these topics may be treated as a failure to comply with this deposition notice and may be treated as a contempt of court or bar the introduction of evidence in subsequent proceeding and at trial.

### DEFINITIONS

1.      The terms "Evolved," "Evolved Wireless," and "Plaintiff" refer to the Plaintiff in these actions and all parents, subsidiaries, affiliates, assignees, predecessors, employees, and agents thereof.

2.      The terms "You" and "Your" mean the Defendant defined above and their parents, subsidiaries, divisions, affiliates, predecessors, assigns, successors, and acquired assets of business units, and any of their present or former officers, directors, trustees, employees, agents, representatives, attorneys, patent agents, and all other persons acting on their behalf.

3.      The term "Document(s)" has the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and encompasses any writing of any kind, including originals and non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). The term "Document(s)" includes without limitation the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk, or other data storage medium, and whether or not claimed to be privileged, confidential, or otherwise excludable from discovery, including without limitation: patents, patent applications, articles, publications, presentations, posters, slides, electronic presentations, notes, letters, correspondence, communications, e-mail, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, HDL,

Verilog, source code or other computer code, illustrations, product descriptions, labels, product inserts, product analyses, requests for proposals, documents related to proposals or actual product improvements or changes, user manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind.

4.      Where used in these Requests, the singular also encompasses the plural and vice versa, the words "and" and "or" shall be conjunctive and disjunctive, the words "all" or "any" shall mean "all and any," and the word "including" means "including without limitation."

5.      "Person(s)" refers to and includes any natural person, corporation, company, proprietorship, partnership, joint venture, association, firm, government entity, or any other entity recognized by law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assignees, predecessors, and successors of each such person.

6.      "Asserted patents" means U.S. Patent Nos. 7,746,916, 7,768,965, 7,809,373, 7,881,236, and 8,218,481.

7.      The "'916 Patent" shall mean and refer to U.S. Patent No. 7,746,916.

8.      The "'965 Patent" shall mean and refer to U.S. Patent No. 7,768,965.

9.      The "'373 Patent" shall mean and refer to U.S. Patent No. 7,809,373.

10.      The "'236 Patent" shall mean and refer to U.S. Patent No. 7,881,236.

11.     The "'481 Patent" shall mean and refer to U.S. Patent No. 8,218,481.

12.     "Accused product(s)" means any product accused of infringement in Evolved Wireless's Complaint filed against Defendant, Evolved Wireless's Accused Products Disclosure served on Defendant, or otherwise identified by Evolved Wireless as allegedly infringing claims of the asserted patents.

13.     "Knowledge of the asserted patents" means knowledge of any facts relating to the asserted patents, including basic awareness of the patents' (and foreign or domestic published applications') existence whether by number or subject matter. "Knowledge" in this context is not limited to any legal meaning of "knowledge" as used in evaluating, for example, indirect infringement pursuant to 35 U.S.C. §§ 271(b) or (c) or willful infringement pursuant to 35 U.S.C. § 284.

14.     "Competitive Reviews" means any review or analysis of products offered by other companies operating in the same industr(ies) as Defendant.

15.     "ETSI" means the European Telecommunications Standards Institute and any committee, subcommittee, working group, or other entity that is currently or has ever been a part of the European Telecommunications Standards Institute.

16.     "3GPP" means the Third Generation Partnership Project and any partner, observer, affiliate, committee, subcommittee, working group, or other entity that is currently or has ever been a part of the Third Generation Partnership Project.

17.     "LTE" means the Long Term Evolution project of the 3GPP. Unless otherwise noted, "LTE" shall include the specifications of all Long Term Evolution releases.

18.     "LTE compliant network" means a mobile data network that is interoperable and compliant with one or more of the LTE standards promulgated by 3GPP to allow access by devices that implement the LTE standard.

19.     "Wireless Standards" means a mobile data network that is interoperable and compliant with one or more standards promulgated by a controlling entity, such standards including but not limited to LTE, WiMax, CDMA2000, WCDMA, and GSM.

20.     The use and definition of any of these words or terms is not contingent on the capitalization or lack of capitalization of those terms as used below. Some terms may be capitalized, including without limitation at the beginning of a sentence, or not capitalized—regardless, the above definitions should be considered to apply.

21.     The "Identified LTE Technical Specifications" means version 8. or later of the following LTE technical specification sections: TS 36.211 §§ 5.1.1 ("Physical channels"), 5.1.2 ("Physical signals"), 5.5 ("Reference Signals"), 5.5.2.2 ("Demodulation reference signal for PUCCH"), 5.7.1 ("Time and frequency structure"), 5.7.2 ("Preamble sequence generation"); TS 36.213 §§ 6.1 ("Physical non-synchronized random access procedure"); TS 36.300 §§ 10.1.2.1 ("Handover"), 10.1.3 ("Measurements"),10.1.5.2 ("Non-contention based random access procedure"); TS 36.321 §§ 3.1 ("Definitions": "HARQ information" and "Msg3"), 5.1.1 ("Random Access Procedure initialization"), 5.1.2 ("Random Access Resource selection"), 5.1.3 ("Random Access Preamble transmission") 5.4.1 ("UL Grant reception"), 5.4.2.1 ("HARQ entity"), 5.4.2.2 ("HARQ process"), 5.4.5 ("Buffer Status Reporting"), 6.1.3.1 ("Buffer Status Report MAC Control Elements"), 6.2.3 ("MAC payload for Random Access Response"); TS 36.331 §§  5.3.5.4 ("Reception of a RRCConnectionReconfiguration including the mobilityControlInformation by the UE (handover)"), 5.5.3—5.5.5 ("Performing measurements",

"Measurement report triggering", and "Measurement reporting"), 5.5.6.1 ("Actions upon handover and re-establishment"), 6.1.3.1 ("Buffer Status Report MAC Control Elements"), 6.2.2 ("Message Definitions": "RRCConnectionReconfiguration"), 6.3.2 ("Radio resource control information elements": "rach-ConfigDedicated"), 6.3.4 ("Mobility control information elements": "MobilityControlInformation"); and TR 21.905 § 3 ("Terms and definitions": "Cell Radio Network Temporary Identifier (C-RNTI)").

## DEPOSITION TOPICS

**TOPIC NO. 1.**     The development, design, testing, coding, manufacture, distribution, and operation of each Accused Product, including the location of each activity for each Accused Product.

**TOPIC NO. 2.**     For each Accused Product, its product name, model number, and any other unique identifier used to identify the Accused Product either internally or externally.

**TOPIC NO. 3.**     For each Accused Product, the baseband processor chip and Build IDs.

**TOPIC NO. 4.**     The name, title, and responsibilities of the Defendant employees responsible for implementing LTE functionality or otherwise ensuring that any Accused Product is compatible with any applicable LTE standard.

**TOPIC NO. 5.**     The name, title, and responsibilities of the Defendant employees, or any third party working on behalf of the Defendant, responsible for any testing to ensure that any accused product is compatible with any LTE standard.

**TOPIC NO. 6.**     For each Accused Product, any differences among the Accused Products related to implementation of the Identified LTE Technical Specifications.

**TOPIC NO. 7.**        The testing and certification of the Accused Products as compatible for LTE networks, including the location and persons responsible for such testing and certification.

**TOPIC NO. 8.**        For each Accused Product, the reasons for implementing LTE functionality.

**TOPIC NO. 9.**        For each Accused Product, the source code that executes the Identified LTE Technical Specifications or otherwise enables the Accused Product to be compatible with LTE compliant networks, including any persons having such knowledge

**TOPIC NO. 10.**        Defendant's knowledge of Evolved Wireless and the Asserted Patents, including persons having such knowledge and the dates those persons acquired their knowledge.

**TOPIC NO. 11.**        Defendant's knowledge of the Identified LTE Technical Specifications, including persons having such knowledge and the dates those persons acquired their knowledge.

**TOPIC NO. 12.**        In the event that Defendant made any attempt to investigate or otherwise determine whether any of the LTE Technical Specifications or any other aspect of LTE functionality was covered by any patent, the nature and extent of such attempt, including all persons involved in each such attempt, the date(s) of each such attempt; and the documents relating to each such attempt.

**TOPIC NO. 13.**        Defendant's participation in ETSI or 3GPP including but not limited to membership with ETSI, participation in the 3GPP Radio Access Network Plenary Group, participation in and 3GPP Radio Access Network Working Group, and any submissions or communications arising in conjunction with such participation.

**TOPIC NO. 14.**       Your unit sales, revenue, gross profit, operating profit, and net profit from the sales of the Accused Products manufactured in, sold in, offered for sale in, or imported into the United States from 2009 to the present by product and by month.

**TOPIC NO. 15.**       Your costs, expenses, losses, and expenditures from the manufacturing, research and development, marketing, advertising or sale of the Accused Products in the United States from 2009 to the present by product and by month.

**TOPIC NO. 16.**       Your pricing of the Accused Products, including the facts and documents you consider in reaching a decision to set the prices at the levels you set them.

**TOPIC NO. 17.**       The geographic markets in which the Accused Products are sold.

**TOPIC NO. 18.**       Market information, market shares, market forecasts, revenue projections, business plans, marketing plans, and sales plans for the Accused Products.

**TOPIC NO. 19.**       Advertisement, promotion or marketing materials created, produced, or sponsored by you regarding the Accused Products, including without limitation any such materials that address benefits of LTE functionality and/or compatibility, reduced data transmission latency, reduced latency during cellular network handoffs, and uninterrupted coverage of data services.

**TOPIC NO. 20.**       Articles, speeches, presentations or interviews, both internal and external, that have been written by and/or given by your employees, officers, directors, consultants or other representatives and advisors that refer or relate to LTE functionality and/or compatibility, including comparisons to 3G.

**TOPIC NO. 21.**       Consumer surveys, focus groups, customer polls, evaluations, analyses, market studies, consumer studies, or other studies conducted on your behalf or

purchased or acquired by you regarding consumer preferences or requirements related to LTE functionality and/or compatibility, including comparisons to 3G.

**TOPIC NO. 22.**        Any study or research related to the factors or criteria your customers consider when deciding whether to purchase any of the Accused Products, including factors your customers consider when deciding whether to upgrade to any Accused Product from a device that does not incorporate LTE functionality.

**TOPIC NO. 23.**        Comparison of sales of the Accused Products with sales of your devices having 3G functionality.

**TOPIC NO. 24.**        The effect of the addition of LTE functionality and/or compatibility on the sales of the Accused Products.

**TOPIC NO. 25.**        The effect of mobile data usage made available by LTE functionality and/or compatibility on the sales of the Accused Products.

**TOPIC NO. 26.**        The impact of reduced interruption of coverage of data services on the sales of the Accused Products.

**TOPIC NO. 27.**        The benefits or advantages of LTE functionality and/or compatibility over 3G functionality.

**TOPIC NO. 28.**        Any analysis or determination made by you or any third party regarding the value of any LTE functionality and/or compatibility for the Accused Products, including reduced data transmission latency, reduced latency during cellular network handoffs, and uninterrupted coverage of data services.

**TOPIC NO. 29.**        The mobile internet applications enabled by LTE functionality and/or compatibility, and available for the Accused Products.

**TOPIC NO. 30.**      Your processes, procedures, or methods for deciding what features, functions, or capabilities to include or remove from the Accused Products including, for example, who makes such decisions and what information and documents were considered in making the decision.

**TOPIC NO. 31.**      Any efforts to license any patents disclosed to ETSI as potentially standard-essential on fair, reasonable, and nondiscriminatory terms, including the licenses offered under such terms, the rates, the technology licensed, and the history of the negotiation of such licenses.

**TOPIC NO. 32.**      Licenses, offers to license, royalty agreements, covenants-not-to-sue, or other agreements relating to LTE functionality and/or any technology declared essential to any LTE standard, including the negotiation of such agreements (whether consummated or not).

**TOPIC NO. 33.**      Sources and methods used to determine or estimate the size and value of any LTE patent portfolio or the value of any individual patents included therein, including but not limited to the patent portfolio you licensed to others, the size and value of the patent portfolio you licensed from others, and forecasts or other reports of each licensing party's sales of licensed products on which you relied or which you have consulted.

**TOPIC NO. 34.**      Any alternative(s) to the technology claimed in the asserted patents and the costs of implementing such alternative(s).

**TOPIC NO. 35.**      Any claim, notice, or tender relating to this litigation.

**TOPIC NO. 36.**      The factual basis for each defense, affirmative or otherwise, asserted in Defendant's Answer to Evolved Wireless's Complaint.

**TOPIC NO. 37.**      Your efforts to preserve, identify, collect, and produce Documents and Technical Documents in connection with a mandatory disclosure ordered by the Court.

**TOPIC NO. 38.**      Your efforts to preserve, identify, collect, and provide information contained in Your responses to Evolved Wireless's interrogatories.

**TOPIC NO. 39.**      Your efforts to preserve, identify, collect, and produce documents in Your responses to Evolved Wireless's requests for production of documents.

**TOPIC NO. 40.**      Your procedures and policies for preventing destruction of any discoverable documents and/or electronically stored information in this case; the date of implementation of such procedures; the circumstances leading to implementation; and the person(s) responsible for implementation.

**TOPIC NO. 41.**      The events, if any, that prompted You to implement a procedure or policy to prevent destruction of discoverable documents and/or electronically stored information in this case.

DATED: October 4, 2016                    Respectfully submitted,

                                          **FARNAN LLP**

                                           /s/ Brian E. Farnan
                                          Brian E. Farnan (Bar No. 4089)
                                          919 N. Market Street, 12th Floor
                                          Wilmington, Delaware 19801
                                          (302) 777-0300
                                          (302) 777-0301
                                          bfarnan@farnanlaw.com

                                          Christopher K. Larus (admitted *pro hac vice*)
                                          Ryan M. Schultz (admitted *pro hac vice*)
                                          Andrew D. Hedden (admitted *pro hac vice*)
                                          Benjamen C. Linden (admitted *pro hac vice*)
                                          Ryan E. Dornberger (admitted *pro hac vice*)
                                          Anthony F. Schlehuber (admitted *pro hac vice*)
                                          **ROBINS KAPLAN LLP**
                                          800 LaSalle Avenue, Suite 2800
                                          Minneapolis, Minnesota 55402
                                          Telephone: (612) 349-8500
                                          Facsimile: (612) 339-4181
                                          clarus@robinskaplan.com
                                          rschultz@robinskaplan.com
                                          ahedden@robinskaplan.com
                                          blinden@robinskaplan.com
                                          rdornberger@robinskaplan.com
                                          aschlehuber@robinskaplan.com

                                          Andrea L. Gothing (admitted *pro hac vice*)
                                          **ROBINS KAPLAN LLP**
                                          2440 W. El Camino Real, Suite 100
                                          Mountain View, CA 94040
                                          Telephone: (650) 784-4040
                                          Facsimile: (650) 784-4041
                                          agothing@robinskaplan.com

                                          **COUNSEL FOR PLAINTIFF EVOLVED
                                          WIRELESS, LLC**